UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE OSCAR ORDAZ GOMEZ,<br><br>Petitioner,<br><br>v.<br><br>SERGIO ALBARRAN, et al.,<br><br>Respondents. | Case No.  26-cv-06614-JSC<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 3 |

Before the Court is Petitioner's *Ex Parte* Motion for Temporary Restraining Order.  (Dkt. No. 3.)  On June 30, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and an *Ex Parte* Motion for Temporary Restraining Order seeking: (1) his release from custody, (2) to enjoin Respondents from re-detaining him absent further Court order or a pre-deprivation hearing, (3) that Respondents return to Petitioner all property confiscated during petitioner's arrest, and (4) to prohibit Respondents from transferring Petitioner out of this District and the country until this proceedings have concluded.  (Dkt. Nos. 1, 3.)  For the following reasons, the TRO is GRANTED as modified below.

## BACKGROUND

According to the record before the Court, Petitioner is an asylum seeker from Mexico who entered the United States in 2005 and currently resides in Pittsburg, California with his wife and two U.S. citizen daughters.  (Dkt. No. 1 ¶ 2; Dkt. No. 3-1 at 9.)  He was detained by Immigration and Customs Enforcement ("ICE") in 2018.  (Dkt. No. 1 ¶ 2; Dkt. No. 3-2 ¶ 3.)  However, he was released from custody in June 2020 pursuant to the *Zepada Rivas v. Jennings*, Case No. 3:20-cv-02731, settlement; placed on an Order of Recognizance; and "has no criminal history in the past 10 years."  (Dkt. No. 1 ¶ 2; Dkt. No. 3-2 ¶ 4.)  Petitioner has not been ordered removed, his

United States District Court<br>Northern District of California

United States District Court
Northern District of California

asylum application remains pending, and his next immigration court hearing is July 26, 2029. (Dkt. No. 1 ¶ 4.)

On October 10, 2025, three plaintiffs filed a class-action complaint challenging ICE's re-detention policy under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–559. *See Garro Pinchi v. Noem*, No. 25-cv-05632-PCP, ECF No. 38 (N.D. Cal. filed Oct. 10, 2025). The plaintiffs in that case filed a motion to "stay" the re-detention policy pending final judgment on their claims and a motion for provisional class certification. On December 19, 2025, the district court issued an order granting the *Garro Pinchi* plaintiffs' motions for provisional class certification and to stay agency action. *See Garro Pinchi v. Noem*, No. 25-cv-05632-PCP, 2025 WL 3691938, at *34 (N.D. Cal. Dec. 19, 2025).

The court certified the following class: "All noncitizens in the jurisdiction of the San Francisco ICE Field Office who (1) entered or will enter the United States without inspection; (2) have been or will be charged with inadmissibility under 8 U.S.C. § 1182 and have been or will be released from DHS custody; and who (3) are in removal proceedings under 8 U.S.C. § 1229a, including any § 1229a proceedings that have been dismissed where the dismissal is not administratively final; and (4) are not subject to detention under 8 U.S.C. § 1226(c)." *Id.* at *12. The court further held that the redetention policy is likely unlawful because it is arbitrary and capricious in violation of the APA. *Id.* at *25. After finding that the rest of the factors favoring preliminary relief were satisfied, the court issued an order staying Respondents' redetention policy, effective immediately. *Id.* at *31–32. Under that order, Respondents may not implement their policy of rearresting and re-detaining class members, unless Respondents first make an individualized determination that there are materially changed circumstances as to the class member's dangerousness or flight risk. Petitioner is a member of the *Garro Pinchi* class. (Dkt. No. 1 ¶ 47.)

Petitioner attended a scheduled Immigrations and Customs Enforcement ("ICE") check-in on June 30, 2026 and, "without notice, ICE detained him." (*Id.* ¶ 3.) "Petitioner has made a good faith attempt to comply with all of his immigration and ICE obligations." (*Id.* ¶ 52.) Nothing has changed in his case that makes him a flight risk or danger." (*Id.*)

On June 30, 2026, this Petition was filed. (Dkt. No. 1.) The same day, Petitioner's counsel provided notice of the Petition and a forthcoming motion for a TRO, along with a copy of the Petition, to Respondents' counsel. (Dkt. No. 3-2 ¶ 7.) Petitioner's counsel emailed Respondents' counsel, who has entered an appearance, and asked if Respondents would stipulate to a TRO, which Respondents declined to do. (*Id.*)

**LEGAL STANDARD**

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up) (emphasis in original). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

**DISCUSSION**

Petitioner has demonstrated a likelihood of success on the merits of his claim that his ongoing detention violates his procedural due process rights under the Fifth Amendment.

3

Petitioner has a substantial interest in remaining out of custody, and the Due Process Clause entitles Petitioner to a bond hearing before an immigration judge prior to any arrest or detention. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1030–36 (N.D. Cal. 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to similar circumstances). His release from ICE custody after his initial apprehension reflected a determination by the government that he was neither a flight risk nor a danger to the community, and Petitioner has a strong interest in remaining at liberty unless he no longer meets those criteria. On this record, no evidence indicates that Petitioner no longer meets that criteria, and thus Petitioner has a strong likelihood of success on the merits.

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that he has "also carried [his] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Meanwhile, the potential harm to the government is minimal. The Government, at most, faces a short delay in detaining Petitioner if it ultimately demonstrates his detention is necessary to prevent danger to the

4

community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)). The balance of hardships thus tips decidedly in Petitioner's favor.

A TRO immediately releasing Petitioner is appropriate to return him to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo). Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is GRANTED as detailed below.

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

**ORDER**

For the foregoing reasons, IT IS ORDERED that:

(1) Petitioner's application is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.

(2) Respondents are ORDERED to release Petitioner immediately from Respondents'

custody and ENJOINED AND RESTRAINED from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker or further order of Court.  Respondents are ENJOINED from removing Petitioner from California, and, if they have already transferred him, are ORDERED to return him to California.  Respondents are PROHIBITED from removing Petitioner from the United States until these proceedings have terminated.

(3) During the pendency of the habeas proceedings, Respondents are ENJOINED AND RESTRAINED from moving Petitioner from the jurisdiction.

(4) Respondents shall provide a status report confirming Petitioner's release by **July 1, 2026 at 5:00 p.m**.

(5) Respondents are ORDERED TO SHOW CAUSE in-person at a hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, at **9:00 a.m. on July 13, 2026**, why a preliminary injunction should not issue.  Respondents SHALL file a response to Petitioner's motion by no later than **July 7, 2026**.  Respondents are DIRECTED to address in their response why their actions are not enjoined and in violation of the preliminary injunction issued in *Garro Pinchi v. Noem*, 813 F. Supp. 3d 973 (N.D. Cal. 2025).  Any reply SHALL be filed by **July 10, 2026**. The assigned Judge may modify this schedule as appropriate.

(6) This Order shall remain in effect until 5:00 p.m. on **July 14, 2026** or as otherwise directed by the Court.

This Order disposes of Docket No. 3.

**IT IS SO ORDERED.**

Dated: June 30, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

6