UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE OSCAR ORDAZ GOMEZ,

Plaintiff,

v.

SERGIO ALBARRAN, et al.,

Defendants.

Case No. 26-cv-06614-EKL

**ORDER GRANTING PRELIMINARY INJUNCTION**

Re: Dkt. Nos. 4, 10

Petitioner Jose Oscar Ordaz Gomez filed a habeas petition and a motion for a temporary restraining order ("TRO") seeking his release from custody and to enjoin Respondents from re-detaining him without a pre-deprivation hearing.[1]  The general duty judge granted the TRO, ordered Petitioner's release, and ordered Respondents to show cause why a preliminary injunction should not issue.  Order Granting TRO, ECF No. 4.  After carefully reviewing the parties' briefs and relevant authority, the Court found this matter suitable for disposition without oral argument.  *See* Civil L.R. 7-1(b).  For the following reasons, the Court GRANTS Petitioner's request for a preliminary injunction as modified.

## I.    BACKGROUND

Petitioner is a 47-year-old asylum seeker who fled Mexico and entered the United States more than two decades ago; he currently resides in Pittsburg, California with his wife and two U.S. citizen daughters.  *See* Petition ¶¶ 2, 51, ECF No. 1.  He was originally detained by Immigration and Customs Enforcement ("ICE") in 2018 based on an arrest warrant that issued in

---

[1] Respondents are Sergio Albarran, Field Office Director of the San Francisco Immigration and Customs Enforcement Office; David Venturella, Acting Director of United States Immigration and Customs Enforcement; Markwayne Mullin, Secretary of the United States Department of Homeland Security; and Todd Blanche, Attorney General of the United States, acting in their official capacities.

Mexico, which accused him of committing a double homicide many years ago. *See id*. ¶¶ 2, 4. However, he was released from ICE custody in June 2020 and placed on an order of recognizance pursuant to the bail application process in *Zepeda Rivas v. Jennings*, No. 3:20-cv-02731, a class action that challenged the conditions of confinement at two facilities on COVID-related grounds. *Id*. ¶¶ 2, 32, 51; *see also Duong v. Kaiser*, No. 25-cv-07598-JST, 2026 WL 2124372, at *1 (N.D. Cal. July 23, 2026) (explaining this process). The *Zepeda Rivas* bail application process took care "both to avoid releasing detainees who are a danger to the community and to minimize the possibility that released detainees will fail to appear." *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 40 (N.D. Cal. 2020), *aff'd in relevant part*, 845 F. App'x 530 (9th Cir. 2021). Ultimately, *Zepeda Rivas* resulted in a settlement through which ICE agreed not to re-detain class members – including Petitioner – for three years "unless they posed a threat to public safety or national security, and/or risk of flight." *Duong*, 2026 WL 2124372, at *1 (citation modified).

Petitioner remained at liberty until June 30, 2026, when ICE detained him without notice at a check-in appointment. *Id*. ¶ 51. Petitioner has no criminal history since he was released – indeed, he has no criminal history in the past 10 years – and only limited criminal history before his initial detention.[2] *Id*. ¶ 4. He is not subject to a final order of removal. *Id*. He has a pending asylum application that seeks withholding of removal and protection under the Convention Against Torture. *Id*. ¶ 16. Petitioner fears that he will be tortured if he is returned to Mexico to face the allegedly false homicide accusations that triggered his initial detention. *Id*. ¶ 4. Although Petitioner's asylum application was initially denied, on appeal, Petitioner and the Department of Justice jointly moved to remand his case to immigration court for further consideration. *Id*. ¶ 52. Petitioner produced evidence that another individual was mistaken for Petitioner and detained by Mexican police "for eight hours," during which he "was beaten and threatened." Reply Ex. B, ECF No. 12-2. Petitioner also submitted expert testimony that he would be "tortured to extract a confession." *Id*. Petitioner's next immigration court hearing is set for July 26, 2029. *Id*. ¶ 4.

---

[2] Before being detained in 2018, Petitioner was convicted in 2000 of driving under the influence of alcohol. He was arrested two other times – once for petty theft in 2006 but the charges were dismissed, and the other for driving without a license in 2016 but no charges were filed. *Id*. ¶ 4.

United States District Court
Northern District of California

## II.   LEGAL STANDARD

The analysis at the TRO and preliminary injunction stages are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  In order to obtain a preliminary injunction, Petitioner must establish that:  (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable harm in the absence of preliminary relief," (3) the "balance of equities tips in his favor," and (4) the "injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (citation modified).  "Where, as here, the party opposing the injunctive relief is a government entity, the third and fourth factors – the balance of equities and the public interest – merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

## III.   DISCUSSION

Petitioner argues that a preliminary injunction is warranted because he has a substantial liberty interest arising from his long-term, detention-free residence in the United States, and that detention may not be imposed absent a pre-deprivation bond hearing.  As discussed below, the Court finds that Petitioner has raised serious questions going to the merits of his procedural due process claim, that he is likely to suffer irreparable harm absent a preliminary injunction, and that the balance of hardships and the public interest tip sharply in his favor.

### A.   Likelihood of Success on the Merits

In the TRO, the general duty judge found that Petitioner had demonstrated a likelihood of success on the merits of his claim that his ongoing detention violated his Fifth Amendment Due Process rights, and that "the Due Process Clause entitles [him] to a bond hearing before an immigration judge prior to any arrest or detention." TRO at 4 (Corley, J.).  In response to the order to show cause that issued, Respondents rely heavily on their argument that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), and that Petitioner cannot claim

United States District Court
Northern District of California

any greater process than what is afforded under that statute.  Resp. at 8-10, 12-13, ECF No. 10.  In the alternative, Respondents argue that even if 8 U.S.C. § 1226(a)'s discretionary bond framework applies, due process requires only a post-detention bond hearing, in which Petitioner should bear the burden of demonstrating that he is not a flight risk or a danger to the community.  *Id.* at 13-14.  The Court briefly addresses the statutory question before turning to the due process analysis.[3]

### 1.    Applicable Statutory Provision

After briefing in this matter concluded, the Ninth Circuit issued a precedential opinion holding that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)."  *Rodriguez Vazquez v. Bostock*, ___ F.4th ___, No. 25-6842, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026).  In reaching this conclusion, the Ninth Circuit joined a majority of appellate courts holding that § 1226(a) applies in cases like this one.  *See id.* at *9.  Accordingly, because Petitioner was apprehended in the interior of the United States, he is not subject to mandatory detention under § 1225(b)(2)(A), and any detention of him is governed by § 1226(a).

### 2.    Due Process

Petitioner has demonstrated serious questions going to the merits of his procedural due process claim.  The Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas v. Davis*, 533

---

[3] Because Petitioner has raised serious questions going to the merits of his due process claim, the Court need not reach Petitioner's alternate argument that his detention violated the order staying ICE's re-detention policy in *Garro Pinchi v. Noem*, 813 F. Supp. 3d 973 (N.D. Cal. 2025).  Consequently, the Court does not resolve Respondents' argument that Petitioner's re-detention complied with the *Garro Pinchi* order because Petitioner is a flight risk.  Resp. at 8 (arguing that "Petitioner's six failed ATD home visits are a material change showing flight risk").  Courts generally reject the position that technical violations such as missed home visits, standing alone, demonstrate flight risk – particularly where the violations are not recent.  *A.F.A.M. v. Albarran*, No. 25-cv-10492-AMO, 2025 WL 3752190, at *4 (N.D. Cal. Dec. 22, 2025) (collecting cases); *Bernal v. Albarran*, No. 25-cv-09772-RS, 2025 WL 3281422, at *6 (N.D. Cal. Nov. 25, 2025) ("Why, if these violations rendered [petitioner] unworthy of remaining on release pending the adjudication of her removal proceedings, did Respondents wait this long to rearrest her?").  Ultimately, whether Petitioner is a flight risk is more appropriately addressed in a bond hearing before the immigration court.

United States District Court
Northern District of California

U.S. 678, 690 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in [removal] proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

In evaluating procedural due process claims, courts first assess whether the petitioner was "deprived of a constitutionally protected liberty or property interest," and then assess "whether that deprivation was accompanied by sufficient procedural protections." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Under this second step, in order to determine whether the procedures are constitutionally sufficient, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

### a. Constitutionally Protected Liberty Interest

At this first step, the Court finds that Petitioner has demonstrated a protected liberty interest in remaining free from detention. "While the liberty interests of U.S. citizens compared to noncitizens are not coextensive, the Fifth Amendment nonetheless entitles noncitizens to due process of law in deportation proceedings." *Abdeltawab v. Armant*, No. 26-cv-01520-MWF (DTB), 2026 WL 1045564, at *2 (C.D. Cal. Apr. 13, 2026) (citation modified) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205-06 (9th Cir. 2022)). Numerous district courts in the Ninth Circuit have held that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody []he has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *see also Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 932 (N.D. Cal. 2025) ("[A]s courts have repeatedly recognized, conditional release from physical restraint gives rise to a protected liberty interest." (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))).

Here, Petitioner has developed a significant liberty interest over the past six years, during which he has remained at liberty pursuant to the order of recognizance and bail application process in *Zepeda Rivas*. *See* Petition ¶¶ 2, 32, 51. Respondents argue that Petitioner's release does not confer a liberty interest because the relief he obtained in *Zepeda Rivas* "was always finite and non-permanent, with a definite termination point of June 9, 2025," when the settlement term concluded. Resp. at 10. However, most courts have rightly rejected Respondents' position. Although the *Zepeda Rivas* settlement "expired and no longer mandates [Petitioner's] release,

neither can it reasonably be interpreted to waive or diminish [his] rights." *Duong*, 2026 WL 2124372, at \*4. The settlement itself provided that it had no "preclusive effect" on any claim "concerning any individual challenges to the legal basis of [a class member's] custody, now or in the future." Settlement at 21, *Zepeda Rivas*, No. 20-cv-2731-VC (N.D. Cal. Jan. 27, 2022), ECF No. 1205-1; *see also* Final Approval Order, ECF No. 1258. Moreover, if Respondents deemed Petitioner a flight risk or danger to the community, they could have detained him over the past six years, even before the *Zepeda Rivas* settlement term ended. Thus,

> [a]lthough the petitioner was initially released on bond in *Zepeda Rivas* based on a finding that he was not a danger to the community or a flight risk, it was the government's choice to allow him to remain released all these years. The government voluntarily entered into an agreement that allowed the petitioner to remain released long after the crisis subsided. . . . He has accordingly established the "enduring attachments of normal life" that give rise to a protected liberty interest, despite the unique circumstances leading up to his most recent release.

*Doe v. Albarran*, No. 25-cv-08774-VC, 2025 WL 3141224, at \*1 (N.D. Cal. Nov. 10, 2025) (citation omitted) (granting preliminary injunction), *appeal filed*, No. 26-198 (9th Cir. Jan. 9, 2026). Accordingly, the Court concludes that Petitioner has established a protected liberty interest.[4]

### b. *Mathews* Analysis

At the second step, the Court applies the three-part test set forth in *Mathews v. Eldridge* by evaluating: (1) the private interest; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the government's interest. 424 U.S. at 335.

---

[4] Respondents rely upon *Giorges v. Kaiser*, No. 25-cv-07683-NW, 2025 WL 2898967 (N.D. Cal. Oct. 10, 2025), but that case is distinguishable. The petitioners in *Giorges* had been convicted of aggravated felonies, and one was subject to a final order of removal. *Id*. at \*2, \*7-8. Therefore, they were subject to mandatory detention under 8 U.S.C. § 1226(c) and § 1231(a). The court concluded that, under those circumstances, the petitioners' release pursuant to the *Zepeda Rivas* settlement did not entitle them "to a liberty interest that they otherwise would not have had." *Id*. at \*8. Here, by contrast, neither category of mandatory detention applies to Petitioner. Therefore, the Court finds the analysis in *Duong* and *Doe* more analogous and persuasive. Respondents also argue that Petitioner's "due process rights are coextensive with the process afforded him under the immigration laws, which do not require a pre-deprivation hearing before his re-detention." Resp. at 12-13. The Court has previously considered and rejected this argument. *See Garcia v. Albarran*, No. 26-cv-04839-EKL, 2026 WL 1879641, at \*5-6 (N.D. Cal. June 30, 2026).

United States District Court
Northern District of California

Here, each factor weighs in Petitioner's favor. As to the first factor, Petitioner has established a significant liberty interest in remaining free from detention. As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high without a pre-detention hearing. *Abdeltawab*, 2026 WL 1045564, at *6. As to the third factor, the government's interest in re-detaining Petitioner without a pre-deprivation hearing in these circumstances is low. *See, e.g.*, *Barbosa da Cunha v. Freden*, 175 F.4th 61, 95 (2d Cir. 2026) (finding no government interest that would "bear a 'reasonable relation' to any legitimate, non-punitive purpose" (quoting *Zadvydas*, 533 U.S. at 690)); *Cordero Pelico v. Kaiser*, No. 25-cv-07286-EMC, 2025 WL 2822876, at *15 (N.D. Cal. Oct. 3, 2025) (noting that whether Respondents "conduct[] a pre-detention hearing – or, indeed, whether Petitioners are in detention or not – will not obstruct the removal process"). "In immigration court, custody hearings are routine and impose a minimal cost." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025) (citation modified); *see also Duong*, 2026 WL 2124362, at *6 ("[B]ond hearings require little expenditure of resources."). Thus, the *Mathews* factors weigh in Petitioner's favor.

### 3.   Remedy

Because the *Mathews* factors weigh in his favor, Petitioner has raised a serious legal question as to his procedural due process claim, and he is entitled to a bond hearing before an immigration judge prior to his re-detention. Respondents contend that the bond hearing should instead occur post-detention. Resp. at 13-14. This argument fails. Generally, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). In some cases, exceptional circumstances may necessitate a post-deprivation hearing. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1035-36 (N.D. Cal. 2025) ("Certainly, there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate."). But here, Respondents have not shown exceptional or changed circumstances that require Petitioner's immediate detention. Petitioner does not have any criminal history since his last release. Respondents argue that circumstances have changed in light of a rearrest order issued by Mexico on June 25, 2021. *See* Resp. at 8. However, even before Petitioner was released in June 2020, it was known that the rearrest order

would likely issue, and ICE has been monitoring Petitioner for years without re-detaining him. Reply at 5, ECF No. 12; Reply Ex. A, ECF No. 12-1.  Finally, although it is for the immigration court to decide whether Petitioner is a flight risk, the Court observes that Petitioner has interacted with ICE on numerous occasions over the past six years, and he was detained while appearing for a scheduled appointment with ICE.  Petition ¶¶ 3, 51.  Accordingly, a pre-deprivation hearing is required to satisfy due process, and Respondents can present the arguments raised above in that forum.[5]

### B.       Remaining *Winter* Elements

Respondents do not meaningfully dispute that Petitioner has satisfied the other *Winter* elements.  Without a preliminary injunction, Petitioner faces irreparable harm from the unconstitutional deprivation of his liberty.  *See Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." (citing 11A *Wright & Miller's Federal Practice & Procedure* § 2948.1 (2d ed. 2004))).  In addition, the balance of the equities and the public interest, which are merged in this case because the government is the opposing party, tip sharply in Petitioner's favor.  The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983).  "Faced with a choice between minimally costly procedures and preventable human suffering, . . . the Court concludes that the balance of hardships tips decidedly in petitioner's favor." *Singh*, 803 F. Supp. 3d at 1049 (citation modified) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017)).  Moreover, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted); *see also Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021

[5] Because Petitioner is not currently detained and Respondents are enjoined from re-detaining him without a pre-detention hearing, the Court does not reach Petitioner's request to enjoin his removal or deportation.  Based on Respondents' representations, Petitioner's removal is not reasonably foreseeable.  He is not subject to a final order of removal, he is actively seeking asylum, and his next immigration court hearing will not be held until July 26, 2029.  *See* Resp. at 4, 15 (speculating that, "[a]t some point, Petitioner may be subject to a final order of removal").  Should circumstances change, Petitioner may seek additional relief as appropriate.

United States District Court
Northern District of California

WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) ("The public has a strong interest in upholding procedural protections against unlawful detention[.]" (citation modified)).

Finally, Respondents do not seek, and the Court will not require, security under Federal Rule of Civil Procedure 65(c) as there is "no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919-20 (9th Cir. 2003); *see also Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (Federal Rule of Civil Procedure 65(c) confers upon the district court the "discretion as to the amount of security required, if any.").

## IV. ORDER

For the foregoing reasons, it is hereby **ORDERED** that:

1. Petitioner's request for a preliminary injunction is **GRANTED**, as modified.

2. Respondents are **ENJOINED AND RESTRAINED** from re-detaining Petitioner in any form without notice and a pre-deprivation hearing before a neutral decisionmaker where the Government bears the burden of proving, by clear and convincing evidence, that changed circumstances render him a danger to the community or a flight risk, and that no conditions other than his detention would be sufficient to prevent such harms.

3. This preliminary injunction shall remain in force throughout the pendency of this action unless earlier modified by the Court.

4. The parties are **ORDERED** to meet and confer and, within 21 days of the date of this Order, propose a case schedule for resolving the remainder of this case, or submit a stipulation that the reasoning in the Court's order granting the preliminary injunction resolves the petition.

**IT IS SO ORDERED.**

Dated: August 12, 2026

Eumi K. Lee
United States District Judge